UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth GODKINS,
Defendant-Appellant.

No. 75–2068.

United States Court of Appeals,
Fifth Circuit.

March 3, 1976.

Colbert N. Coldwell, El Paso, Tex. (Court appointed), for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., William B. Hardie, Jr., Ronald E. Ederer, Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before TUTTLE, GODBOLD and GEE, Circuit Judges:

TUTTLE, Circuit Judge:

This case involves the right of a criminal defendant to call as a witness at trial an alleged government informer whose identity is already known to the defendant. Because we believe that the district court misinterpreted the scope of the confidential informant's privilege originally announced by the Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), we reverse the conviction on the basis of the district court's refusal to allow appellant to call the alleged informer as a witness, and remand for a new trial.

Appellant Kenneth Godkins was convicted by a jury of violating federal narcotics statutes, 21 U.S.C. §§ 841(a)(1) and 846, by conspiring to possess, and possessing with intent to distribute, one ounce of cocaine. Prior to trial, Godkins moved to subpoena as a defense witness one John Doe,[1] but the government objected on the grounds that granting the motion would lead to the disclosure of the identity of the confidential informer involved in the case. The trial court had initially entered an order authorizing the issuance of a subpoena to Doe and requiring the government to:

> "disclose to Defendant's attorney any and all information that it has in its files pertaining to [John Doe], which bears or might tend to bear upon his credibility as a witness in this case. The Government is particularly required to provide information hereunder of cases of a similar nature to the transaction in this case, concerning other individuals, which information has proved, at least in part, to be untrue. Such information may be used by Defendant for impeachment of the witness, [John Doe.]"

However, when the trial commenced and, after conducting an *in camera* hearing on the motion and inspecting affidavits by three government agents bearing on the informer's identity and the degree of his involvement in the events at issue, the district court held that the confidential informer's privilege was applicable. The court forbade appellant, on pain of contempt, *from producing Doe as a witness at trial.* Furthermore, during the *in camera* hearing the judge prohibited any defense cross-examination of government agent Rochon on matters pertaining to the informer's identity, reliability, or the extent of his participation in the transaction at issue. Finally, the district court held that Godkins could not testify *in camera* as to the informer's identity (which Godkins alleged he already knew) without waiving his privilege against self-incrimination at trial.[2] Thus effectively foreclosed from developing any evidence which could be used to support an entrapment defense (a possibility which Godkins' attorney had raised at the pre-trial hearing), appellant went to trial relying primarily on an insanity defense, which was rejected by the jury, and upon conviction received a fifteen-year sentence (with five years' special parole) on each count, with the sentences set to run concurrently.

Appellant has raised six points of error, four of which involve allegedly prejudicial statements made at trial either by a government witness or by the court itself and which will be dealt with first. The final two grounds urged for reversal involve rulings by the district court in the pre-trial hearing on the confidential informant's privilege, and are discussed last.

## I. ALLEGED ERRORS OCCURRING AT TRIAL.

■ Appellant contends that certain statements made during the course of

---

1. We refer to the witness as *John Doe* because we think it unnecessary even tentatively to identify this particular person as the informer in this case.

2. Appellant does not challenge this ruling on appeal.

the trial require reversal of his conviction and the granting of a new trial. First, he alleges that the district court erred in admitting into evidence testimony concerning appellant's admission of a prior narcotics conviction. After testifying about the cocaine purchase he made from appellant, Agent Rochon described the conversation which followed the transaction. Rochon testified that appellant recommended using the mails, saying, "It's the smart way of doing it. When I was younger I was stupid and they caught me flat with three ounces." Appellant was also reported to have said (according to Rochon) that he would never go to jail again.

Appellant contends that the government elicited these statements in an attempt to prove prior similar crimes, and with the intent of obtaining a conviction for the crime charged in *this* proceeding. Given the fact that appellant's primary defense at trial was that of insanity, however, we find that Rochon's testimony was admissible to show appellant's state of mind and his knowledge that the acts he was committing were unlawful. *Cf. United States v. Goodwin*, 492 F.2d 1141, 1149 n. 5 (5th Cir. 1974); *see generally McCormick on Evidence*, § 249 at 591 (2d ed. 1972).

■ Appellant's second contention is that the district court erred in allowing into evidence the following testimony by Rochon:

"It began by Mr. Godkins telling me, 'I know what you are down here for, but would any of your people be interested in Mexican brown?'"

Rochon then testified that at that point appellant Godkins offered him a substance identified by appellant as "good" Mexican brown (street parlance for heroin). Appellant argues that this testimony was introduced by the government to "blacken" him as a heroin dealer in the eyes of the jury. In light of appellant's previously-announced intention of possibly introducing evidence to establish an entrapment defense, however, the admission of the above statement was permissible to show a willingness or predisposition to deal in prohibited narcotic substances that would serve to negate an entrapment defense. *Cf. United States v. Dickens*, 524 F.2d 441 (5th Cir. 1975).

■ The third statement made by Rochon on the stand which is argued to constitute reversible error was the observation that appellant's co-conspirator, Richard Russell (who was not tried with appellant because he was still at large), appeared to be a "runner" for appellant. The district court's admission of this statement is argued to have been prejudicial because without it the jury might have concluded that Russell was solely culpable for the crime at issue. We cannot agree with this reasoning. While Agent Rochon was not testifying as an expert witness, he was nevertheless familiar with the circumstances surrounding the negotiations for the sale of cocaine and had firsthand knowledge and observation of the relationship between appellant and his co-conspirator. Moreover, defense counsel had ample opportunity to cross-examine Rochon on his opinion in order to discredit it. In light of these considerations, we do not find the admission of Rochon's statement to be reversible error.

■ Appellant's final allegation of error at trial concerns a statement by the court during cross-examination of Rochon at a point when the government objected to a particular question by defense counsel. In response to the defense's statement that the question was designed to establish that the confidential informer was not necessarily reliable, the court stated:

"Well, he didn't apparently [furnish false information] in this case according to the government's case. I'll overrule that objection."

Defense counsel objected to this comment by the court, and appellant now contends that the statement was highly prejudicial to his case and constituted reversible error. Appellant's argument, however, overlooks a number of important factors. First, as the government pointed out immediately after appellant's attorney objected to the court's remark,

the reliability or unreliability of the informer in this case is immaterial, since it has no bearing on whether appellant did in fact commit the offenses charged. Second, the court stated only that the informer furnished reliable information in this particular instance *"according to the government's case."* The use of this latter qualifying phrase clearly indicates that the reliability of the informer, if at all relevant, had not been established beyond a reasonable doubt, but that the government had simply put on evidence to show his reliability. Finally, the court's instructions during the jury charge to ignore its comments on any of the evidence was sufficient to cure any defect which may have occurred.

## II. THE DISTRICT COURT'S *IN CAMERA* RULINGS.

The last two errors urged by appellant as grounds for reversal involve pre-trial rulings by the district court in an *in camera* hearing on appellant's motion to have John Doe produced at trial as a defense witness. Appellant contends that it was reversible error for the court to prohibit his attorney from cross-examining Agent Rochon as to the confidential informer's reliability, and to deny the motion to call Doe as a witness at trial. While we reject the first argument, we hold that it was error for the district court to deny appellant his Sixth Amendment right to call Doe as a witness.

█ With respect to the issue of limiting the scope of cross-examination of Agent Rochon in the *in camera* hearing, we do not find that the district court's refusal to allow questions pertaining to the confidential informer's reliability constituted reversible error. As noted before, the reliability of the informer in this case is irrelevant to the central issue of criminal liability: that is, whether appellant knowingly possessed (and/or conspired to possess) cocaine with the intent to distribute it. Moreover, appellant raised no Fourth Amendment issues with regard to which the informer's reliability might have been relevant. There was, for instance, no search or seizure based on the reliability of the informer. Given these facts, it is difficult to see how appellant's case could have been prejudiced by the district court's *in camera* refusal to allow defense counsel to pursue the issue of informer reliability via cross-examination of Agent Rochon.

The court's prohibition against calling John Doe as a witness at trial, however, presents a much more serious issue of constitutional dimensions. The Sixth Amendment guarantees to a criminal defendant certain fundamental rights, including the right to call witnesses on his behalf at trial, and to have the use of compulsory process if necessary to achieve this purpose.[3] In this case, however, the district court found that appellant's Sixth Amendment rights must be subordinated to the government's claim of confidential informer's privilege as enunciated by the Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

In *Roviaro* the Supreme Court recognized for the first time the existence of a confidential informer's privilege, which it defined as "in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. at 59, 77 S.Ct. at 627. In that case, Roviaro had unsuccessfully sought prior to trial, to learn the identity of the government informer involved in the case, claiming that the informer had been an active participant in the illegal activity at issue (a narcotics offense), and that therefore the govern-

---

3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S.Const. Amend. VI.

ment could not withhold his identity, his whereabouts, and whether he was alive or dead at the time of trial. The Supreme Court held that the district court had erred in upholding the government's assertion of the privilege, given that the informer was the sole participant, other than Roviaro, in the transaction charged, and the only witness in a position to amplify or contradict the testimony of government witnesses. Refusing to set out any inflexible rules for the applicability of the privilege at issue, the Court instead approached the question of the scope of the privilege in the following manner:

> "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. . . .
>
> The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.
>
> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

> . . . . . .

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 59–62, 77 S.Ct. at 627, 628 (footnotes omitted).

■ *Roviaro* thus appears to function as a limitation, in certain circumstances, on a criminal defendant's Sixth Amendment right to call a witness whose testimony could have a bearing on his defense. This results because it places limitations on the power of an accused to require the government *to disclose the name of an informer.* If the confidential informer's privilege is applicable, the defendant is prevented from obtaining access to the witness, for one cannot subpoena a witness whose name one does not know. This is quite a different matter from denying a defendant the right to subpoena a witness already known to him and who was present at the time of the alleged sale and who had introduced the defendant to the special agent who allegedly completed the purchase. We have found no case which authorizes a trial court to restrict the right of an accused person to subpoena any witness already known by him to give relevant testimony simply because by questioning such witness he may be uncovered as an informer.

The possibility that the witness's testimony might reveal the identity of a government informer connected with the case simply is not enough to bring this case within the scope of *Roviaro's* indirect limitations of a criminal defendant's Sixth Amendment right to call witnesses. *See United States v. Davenport,* 312 F.2d 303 (7th Cir. 1963), where at page 305 the Court said:

> "Undoubtedly defendant is correct in his insistence that he was entitled to the right to have compulsory attendance of witnesses and that who they were to be was a matter for him and his counsel to decide . . . . That the witness was an informer is irrelevant."

Moreover, the concerns voiced by the Supreme Court in *Roviaro*—there the desirability of shielding from disclosure to those who would have cause to resent it, the identity of an informer—are not violated by our holding here. Appellant, the person who would have the greatest cause to resent the actions of the alleged informer, is not seeking disclosure of the informer's identity, but is merely exercising his Sixth Amendment right to call a witness whose identity and participation in the alleged illegal acts are already known to him. *Roviaro* does not apply in this situation[4] and consequently we find the district court's refusal to allow appellant to call Doe as a witness at trial constituted reversible error.

For the reasons above stated, the judgment of the district court is reversed and the case remanded for a new trial.

GEE, Circuit Judge (specially concurring):

Believing that we should remand for an *in camera* hearing on the need for witness Doe's information, I disagree with the majority's refusal to take *Roviaro* to its logical next step. On its facts, *Roviaro* merely prevents an accused in some circumstances from requiring the government to disclose a confidential informant's identity. But this protection necessarily shields government agents from defense questions seeking information that would tend to reveal the protected identity. And if the government's interest in secrecy so outweighs the accused's right to prepare his defense that defendant can be prohibited from asking a witness questions that might reveal an informant's identity when the witness is a government agent, then surely we should likewise prevent defendant from asking similar questions when the witness is the very person whom defendant suspects of being the informant.[1] As we have done several times recently when the government sought to learn an informant's identity,[2] I would order the trial judge to conduct an *in camera* examination of the witness to aid in striking the *Roviaro* balance. If the balance favors the government,[3] then defendant should be permitted to ask only questions that would not tend to reveal the informant's identity. If defendant has no other questions, the judge need not order the witness to appear in open court at all. The majority claims that this would violate defendant's right to compulsory process. But

---

**4.** While we do not reach this point, it should be noted that even if this case came within the scope of *Roviaro* factually, under a recent decision of this Court, the informer's privilege would be unavailable. In *United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir. 1975), we stated that in cases where the defendant asserts he was entrapped by a government informer, *Roviaro* is ordinarily inapplicable since the defense rests upon allegations which the informer would be in a unique position to affirm or deny. 507 F.2d at 1219. In the instant case appellant's attorney made it quite clear to the district court, in the course of the *in camera* proceeding, that he desired to call Doe as a witness for the purpose, *inter alia*, of attempting to establish an entrapment defense. But in a *Roviaro*-type case, *see* the more recent cases of *United States v. Freund*, No. 75–1100, 525 F.2d 873 (5th Cir., 1976); *United States v. Doe*, No. 75–2373, 525 F.2d 878 (5th Cir., 1976); *Alvarez v. United States*, No. 74–3730, 525 F.2d 980 (5th Cir., 1976).

**1.** I take issue with the majority's statement that the *Roviaro* Court's reasons for shielding

the informant's identity would not be furthered here. Compelling witness Doe to testify at retrial might very well expose him (or if not Doe, the real informant) to retaliation from Godkins by verifying his strong suspicion that Doe is the informant, to revenge from others against whom Doe (or the real informant) may have informed previously by publicly exposing his identity at trial, and to possible danger in any future work as a government informant. For the same reasons, exposure of the informant in open court would probably destroy his future usefulness as an informer and hamper recruitment of other informers.

**2.** *See Alvarez v. United States,* No. 74–3730, 525 F.2d 980 (5th Cir., 1976); *United States v. Doe,* No. 75–2373, 525 F.2d 878 (5th Cir., 1976); and *United States v. Freund,* No. 75–1100, 525 F.2d 873 (5th Cir., 1976).

**3.** Recognizing, of course, as we did in *United States v. Gomez-Rojas,* 507 F.2d 1213, 1219 (5th Cir. 1975), that the balance when defendant asserts entrapment by an informant usually, *but not always,* favors disclosure.

that right is not absolute, and it can be outweighed not only by other constitutional rights, but by "the legitimate demands of the adversary system."[4] And if the witness is privileged from answering all proposed questions, then as we held in *United States v. Lacouture,* 495 F.2d 1237, 1240 (5th Cir. 1974) (defendant cannot require to take the stand a witness who intends to exercise his fifth amendment right to remain silent), defendant's right to compulsory process is exhausted by the witness's physical availability for the *in camera* hearing, and the judge can properly refuse to permit defendant to call the witness at trial.

---

4. *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975) (court can choose to prevent a witness from taking the stand if his testimony is properly excludable). *See also United States v. Deaton,* 468 F.2d 541 (5th Cir. 1972) (no error in denying defense motion for compulsory process when

proposed testimony is inadmissible hearsay or irrelevant); *Hoskins v. Wainwright,* 440 F.2d 69, 71 (5th Cir. 1971) (no denial of right to compulsory process when pauper defendant fails to make colorable showing of need for production of the witness at government expense).